Good morning. May it please the Court, Michael Powell on behalf of the appellant, Mr. Rodriguez-Samano. What we're discussing here today is what qualifies as a crime of violence under the Immigration Code. This is the much-beloved modified categorical approach. The much-beloved by everyone, yes, Your Honor. I think really the difference here is there's actually, as far as I can see, there's not a case in the country except for the Fourth Circuit case that decided whether or not ESCAPE fit 18 U.S.C. 16, which is the required definition under the Immigration Code that comes out of 1101A43F, which applies to illegal reentry cases directly through the guidelines and through the statutes themselves. And there's a basic distinction here. All the other cases that have dealt with ESCAPE as a crime of violence have come under the definition of 4B1.2 in the guidelines, which is the same definition that's in 924C, which is for armed career criminals. Does the judge here have the Arizona statutes? Did not, Your Honor. So it's just a goof, huh? Just made a mistake, didn't look at the elements. Well, he couldn't – well, it wasn't provided to him. In fact, the statute that was provided by the defense, I would – Why wasn't it provided? Well, I would assume that that would be the government's burden to prove that that applies, and it wasn't provided to the judge by the government. Now, the defense provided a classification statute, which wasn't the right one. I take it you weren't defense counsel there. No, I was not, Your Honor. But, I mean – Putting questions of waiver aside, that may or may not be an issue, it would be smart to give the judge the statute. Well, I totally agree with that, Your Honor. I believe – Maybe you wouldn't be here. That may well have been true. But, again, and as far as providing it, I think in – at least it seems to me it's the government's burden to do that. They're the one that wants to add the eight points. They have to prove that that applies. It's your client, you know. Well, I understand that. It doesn't matter. It would have been better to provide it against him. It would have been better. The argument would have made more sense to the judge. I mean, arguably, it's the court's burden to look up the law. So – Well, we're advocates. We probably ought to help it if we want to effectively advocate our position. I can't see where this helps or hurts – I mean, having provided or not provided helps or hurts the legal argument. Either the court got it right or the court got it wrong. It just would have been very helpful – Yes. for the district judge to actually have the law there to compare with and see that one has an element of force and one doesn't. At least that's the argument. Well, in this case – but the judge basically made his decision on the guideline for B1.2 definition. He said that right in the record. I believe it was the – it's cited in both briefs. He – the government provided him with the out-of-circuit case law on escapes, which all are armed career cases. And the court cited to those and says he thought that all escapes came under 4B1.2. In fact, he made a blanket decision based on those cases that all escapes are generically and categorically crimes of violence. Whether or not that's true under 4B1.2, I don't know. But it certainly isn't true under 18 U.S.C. 16B. If you actually look at the statute, I mean, even the statute on the space, the classification statute, it can't be 16A. There's two aspects to the statute. Right. Nobody argues it's 16A. Right. The question is whether there's something about escape, no matter how defined, that makes it inherently a crime of violence. I guess your position is that if you oversleep your home visit or you're on a work furlough and you stop at a bar or something, have more drinks than you should, which means probably any drinks at all, and then didn't make it back, that would be an escape under his own law. Well, under his own statute, because under their definition of custody, in fact. What remedy do you want here? Well, I would just do it. Do we send it back for a, under your view, for an application of a modified categorical approach? Because we don't have a complete record of what happened in State court, right? It could be that the statutory crime was narrowed by the indictment or some other charging document. It could. But I think what I would like the Court first is to point out to the district court that the proper definition in this situation is 18 U.S.C. 16B, which the Court didn't understand because it said it thought that all escapes had the potential for risk, which is the definition that comes under the guideline statute, not the one we're concerned with, which requires a substantial risk that someone will be injured naturally in the occurrence of this crime. Is escape a continuing offense or at some point in time is it over? Well, you know, Judge, I don't know. I can't say. I never looked that part up in Arizona law, and I know in some states it is a continuing offense. And it continues every day until you give yourself up or recapture. But I don't know if that adds much to the analysis in terms of whether or not you're liable under this particular statute. Well, they talk about this dynamite. Well, yes, the powder keg theory. And I don't disagree with that if you're talking about a potential. Because what there's, you know, every arrest has the potential that somebody is going to be injured. And whether you're being arrested for escape or you're being arrested on a traffic warrant, there certainly is potential. But there's not a substantial risk there because the difference between a potential is anything that's possible. Everything has some potential for that. Is it correct the Fourth Circuit doesn't apply the modified Taylor approach? It does not because they were looking at it in a different aspect because they looked at it under A. And, in fact, the difference there is that to be guilty of that statute, which I think was 762 in the federal regs, was you had to actually aid someone out of actual custody. In other words, it's more akin to prison breaking. That was the crime that they were charged in the Aragon case out of the Fourth Circuit, which they found certainly had a high substantial risk when you're going to go into a place, as they put it, where you have armed guards. Then the substantial chance of a risk of injury there is pretty great. Well, what in the record besides the pre-sentence report tells us what happened? It just says he escaped. I'm looking at page seven. That's all it says. Well, I think they had. Escape in the second degree. Right. That can cover a lot of things, right? Well, under the Arizona statute, you had even misdemeanor, Judge. Well, they have a paragraph, don't they, on the next page? I don't think it says much. April 28th, 1996, while the defendant was incarcerated, Arizona State Prison Complex climbed over a 12-foot fence covered with six feet of wire mesh. But can you rely on a pre-sentence report in making this? Can the district court rely on a pre-sentence report? No, Your Honor, we can't. That's what Corona Sanchez says. You can't look at that because, in fact, what you're looking at there are the facts. And under Taylor, we need to look at the statute. And the statute says that the range of conduct the statute punishes is too broad to say it's categorical. We can look at the indictment because the indictment charges more narrowly than the statute. Right. And if he pleads guilty to that or is convicted in that, that must have been what was found. Well. But we don't have the indictment here. I, you know. Or whatever it is they have in Arizona. Well, the indictment is here, Judge. It's in, I put it in, it's in our, it was introduced at, I believe it was. Yeah. It's in, if you look in our appendix, the indictment narrowed it down to the point where. It's not a home escape. No, it's not. It's not a home escape. No. It's some sort of escape from custody. Right. But it's not. Not necessarily. No, they're saying it was from, I mean, at least the way it's played, it was from some kind of secure facility. It could be a work furlough. Yes. It could be. It could be a camp. It could be anything. It might be a hospital. Yes. This is a juvenile secure care facility or an adult correctional facility. I mean, there's. So it precludes oversleeping your home for a home, I'm sorry. Well, that's. You know, if you're on home detention and going off a pack of cigarettes when you're not supposed to. Well, probably in this particular case, because there's three different aspects to the statute, and one of them is a misdemeanor. But what I'm trying to get to here is that the judge needs to know that he has to look at the analysis to begin with. And what he said was all escapes are crimes of violence, period. I mean, and that's not true. It can't be true under Taylor, and it can't be under this statute or many other statutes in this particular circuit. And, I mean, I think that's what I'm trying to get at, and I see I've already exceeded my time. Negative numbers, yes. We'll let you save the rest of your time. May I please record my name is Robert Don Gifford. I'm an assistant U.S. attorney with the District of Nevada. A couple things I would like to build to, I guess, clearly point out is that the. Did you represent the government in this case? No, Your Honor, I did not. I've assumed this case from another attorney in my office. Did he confess in error? Oh, no, sir. No, sir. Okay. The couple things I do want to point out, first and foremost. First, shouldn't he have called the statute to the court's attention? The underlying statute for Arizona was, I believe, was spelled out to the court in the defendant's objection. They objected to the statute itself. What the defendant did not do was they did not object to the facts as they were spelled out in a pre-Senate report. And I would not agree with. I mean, you guys have got to accept Corona-Sanchez. It's a law of the circuit, like it or not. I think I was on it. I dissented. But that's the law of the circuit. I think you just have to come to grips with Corona-Sanchez. It says you don't look at facts. Facts don't matter. You look at challenging documents. And you look at the crime of conviction. And it's just clear as day that this court goofed in this case. You should just confess error and go back and do it right. I just can't see how you could compare the federal statute, 18 U.S.C. what, 16 or whatever it is, with the Arizona statute. One requires a substantial risk of harm, whereas the Arizona statute can be violated in a number of ways, including oversleeping your weekend furlough or walking away from a state hospital. Not all of which involve a substantial risk of harm. This court obviously did not compare the right federal statute with the right state statute and looked at the pre-sentence report, which now said he can't do. What is there left to talk about? Well, it's Romero-Rendon. It's also a nice circuit case from 2000. I believe the site's 220 F. 3rd, 1159. It talks about a clear ‑‑ Corona-Sanchez or Post? Corona-Sanchez was decided after but did not overturn Romero-Rendon, which talks about an unchallenged pre-sentence report. In this case, there was nothing about the facts that were being unobjected to. Corona-Sanchez doesn't ‑‑ there's an objection. Look at the facts. Corona-Sanchez, you can't look at the facts. He doesn't have to challenge it. It is his pre-sentence report. The thing that Corona-Sanchez says, it don't matter. What happened in your specific case doesn't matter. You compare the crime of conviction with the crime of now. That's what the case law says. What the pre-sentence report ‑‑ you don't have to challenge the pre-sentence report. It has no relevance. In our case law, it means nothing. So I don't understand what business they have challenging it or why they would challenge it. Well, then as ‑‑ at another angle, Your Honor, the court did have in front of it, even though they did not specifically spell on the record, we are now conducting a modified categorical approach. The defense attorney says, Your Honor, you're looking at the pre-sentence report alone. The judge said, No, I'm not. I'm also looking at the indictment and the judgment of conviction. So when he looks at that, he's got some more information other than the pre-sentence report. Secondly, there are crimes that, in of itself, are inherent in nature that they are dangerous. Now, an escape, even though it could be a walk‑away escape, or walk‑away escapes have been found to be crimes of violence in other circumstances. Do you agree that the relevant federal crime in 18 U.S.C. 16? Yes. Okay. Look at B. You have it there in front of you? I do, Your Honor. Okay. Look at B. Yes, sir. Any other offense that is found in that by its nature, by its nature involves a substantial risk of physical force against the person, or probably another, substantial risk of physical force. Yes, sir. Now, are you willing to tell me that, is your theory that everything that is defined in the Arizona laws of escape carries with it a substantial risk of physical force? I think the guy who misses the bus coming home from a work furlough, who is technically an escapee, or who stops off at a bar and has a beer when he's not supposed to be drinking, he stops off at a bar, has a beer, his probation officer is waiting outside, happens to be walking by, sees him coming to the bar and says, Aha, you're on a work furlough and you stopped for a beer. You think that's a powder keg? That carries a substantial risk of physical force? Your Honor, I'm asking you a question. Do you think it does? I do, and this is why. The reason why is that we have an individual who is a convict. Really? Even the guy who is convicted is in custody, doing time for maybe drunk driving or for some other sort of minor offense? Yes, Your Honor, because it is often that when law enforcement is involved and someone is involved with the criminal system, they realize that they are in trouble. They've been scolded by a judge. You're going to do what we say. You're going to be going to jail if you don't do what I say. As soon as they mess up, and someone has to come looking for them. Okay, I understand. So that's your position. Yes, Your Honor. Everything that's defined under Arizona law as an escape, the guy who stays too late on his work furlough is an escapee under Arizona law, or the guy who walks away from a mental hospital is an escapee under Arizona law. It carries a substantial risk, inherently involves a substantial risk of physical force. That's a government position. I understand it. Do you agree, do you not, that you have to win or lose on that proposition? If we disagree with you on that, we have to reverse. No, Your Honor. You don't agree? Okay. Well, next time you come in here, you ought to come in with a banner that says, don't give up the ship. Well, no, I understand. Tell me, so you do not think your case stands or falls on that proposition? Well, no, because I think. Okay, let's say, let me tell you with some degree of certainty that I don't buy it. I don't buy the proposition that everything that violates the Arizona statute carries with it a substantial risk of physical force. Okay, so not having bought that proposition, how can I, and I really want to rule for the government because that's where my heart is, how would I come about doing it? Your Honor, if the court was to find that the statute was overbroad and therefore would over-encompass what a crime of violence would be. I understand my question. I understand what I asked. Let's say you lose with me on that proposition. I do not buy the argument that everything that's covered under the Arizona law, the Arizona escape statute, carries with it a substantial risk of physical force. Okay? You've just lost on that with me. How do I still go about ruling against you? Don't restate the problem. Just give me an answer. The district court did conduct a modified categorical approach. We can demand to do that. But we don't have a modified categorical approach. The district court didn't do it. Well, I believe that they did when they stated that they were not relying on the pre-sentence report alone, that they were looking at the judgment of conviction and the charging document. And when the charging document, what they classified it as is that they definitely, the charging document nor the judgment of conviction says this was a constructive custody. It spelled it out that he walked away. I'm sorry, the charging document is indictment? The indictment and the judgment of conviction. It says that the defendant escaped from, as they stated in the indictment and the judgment of conviction, that it was a secure juvenile facility or adult facility. In this case, the individual was 47 years old. But under the statute, that's the way it reads. So even though the court never did say they – I'm sorry, what example does it say? This is an indictment. Yes, sir. The indictment says that the defendant was charged with, and the judgment of conviction shows that he was convicted of, escaping from a secure juvenile facility or adult facility or detention. That could have been overstaying a work furlough. That could have been he went on a work furlough or a weekend furlough at home and missed the bus back and he'd be an escapee. Is that true? If you look at the statute, isn't that correct what the judge just said? I don't see it that way. And to be honest, I hadn't looked at it to say that that's – because when you say that a furlough is the equivalent of a secure facility, and, in fact, I believe that there was – But you are in a secure facility. You are given leave to go on a work furlough. You are supposed to check in and be back, and you're not supposed to take any detours. You're not supposed to stop for a drink. You're not supposed to stop and see your girlfriend. And let's say you do one of those things. You know, you are sort of tempted by being on the outside, and you're walking by the girlfriend's house, or, you know, the prisoner walks by and says, I'm going to go in for a quickie, you know, and does that and gets caught. Okay? That, under the definition of a statute, and, you know, maybe that delays his return to the prison. It sounds to me like escape, if I understand the Arizona statute right. And it seems to me that that would fall within the Arizona definition of escape, and then you'd have to map it against 16B, and we'd have to figure out whether that was an inherently explosive situation, creating a substantial risk of harm. I agree with your analysis, Your Honor, but the one thing is that the defendant was convicted of from a secure care facility, juvenile detention facility, or adult correctional facility. The defendant, the appellant has provided the definitions, and the work furlough would fall under the definition of custody. Custody was not what he was charged with or convicted of, but he was charged with escape, and I'm referring to the appellant's attachment at three with the definitions. And if he was charged with escaping from custody, I would agree, but he's charged with escape, and so it's not escape from custody. It's escape from a juvenile secure care facility or an adult correctional facility. So I think that if he'd been charged and convicted of escape from custody, I would agree with you wholeheartedly, but in this case I think it's clear that he escaped from an actual facility. And I still take the view. Is that clear? I don't know. You think that when they give you a work furlough, let's say from one of those facilities, and you walk away. Let's say you never go to your work furlough. You just walk away from it. You think that's not an escape from the facility itself? That's an escape from custody? I don't know. See, that's the problem. The district court did not engage in this kind of analysis, and here we are hypothesizing about what these things mean because the district court was distracted by the pre-sentence report, which you guys keep putting in to distract the district courts. You're going to have to cut it out. They don't count. Not until Corolla-Sanchez. Not until Corolla-Sanchez overruled. The Supreme Court just took a case here in the fall from the First Circuit dealing with this very issue. So maybe we'll get some clarification then. Thank you, Your Honor. All right. A few minutes will let you escape from this building. All right. Next matter is Jackson v. California. We got the NGO. Is that the right one? California Department of Mental Health? No, I think no is next. No.
judges: Pregerson, Kozinski, Rhoades